**Keith SMITH, Plaintiff,**

v.

**SEARS, ROEBUCK & CO.,
et al., Defendants.**

**No. C 01–03252 CRB.**

United States District Court,
N.D. California.

June 12, 2002.

Lanny Jay, Monte Rio, CA, Roger B. Thurrell, Santa Rosa, CA, for Plaintiff.

Cody Jaffe, Kenneth A. Jew, Tyler A. Brown, Jackson, Lewis, Schnitzler & Krupman, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Now before the Court is defendant's motion for summary judgment in this wrongful termination action. The Court heard oral argument on this matter on April 26, 2002. At that time the Court took the matter under submission and invited the parties to submit supplemental evidence. Having carefully considered all of the papers filed by the parties, including supplemental submissions from both sides, the Court hereby GRANTS in part and DENIES in part defendant's motion for summary judgment.

## BACKGROUND

Defendant, Sears Roebuck & Co. ("Sears"), hired plaintiff, Keith Smith, as an appliance installer on October 1, 1987 in Santa Rosa, California. Within several months he was promoted to "Service Technician," a position he retained until he was terminated in 1997.

On January 25, 1996 plaintiff suffered a serious knee injury playing basketball.[1] He received treatment through Kaiser Foundation Health Plan, Inc. ("Kaiser"), where he was advised to take leave from work until February 20, 1996. Smith returned to work from February 20 through March 25. During that time Smith's supervisor, John Dell, agreed to assign other technicians to calls that Smith felt he was unable to handle.

After Smith left work on March 25, 1996 he underwent orthoscopic surgery. He received short-term disability payments pursuant to defendant's plan for 20 weeks beginning March 25, 1996. When short-term disability payments terminated on July 28, 1996, Smith took a year of unpaid medical leave. He also applied for Long-Term Disability ("LTD") benefits through Sears' plan with MetLife.

On September 4, 1996, Dr. Briant Smith, plaintiff's physician, issued a medical certificate stating that plaintiff could return to work, but with significant physical restrictions of an indefinite duration. The certificate stated that plaintiff should never lift or carry more than 10 pounds, and only occasionally lift or carry less. The certificate also stated that plaintiff should never

---

1. Plaintiff does not dispute that this injury was non-work-related.

bend, squat, kneel, or climb. *See* Defendant's Exhibit K.

Smith claims that in July 1997 he requested reassignment, retraining, or an extension of his medical leave from his manager, Mike Riordan. Smith claims to have made similar requests of two personnel managers, Patti Forbes and Bernie Gibbs, prior to that. Sears officially terminated Smith on July 31, 1997 after his year of medical leave had expired and it determined that he was unable to return to work in any capacity.

Smith filed a claim with the California Department of Fair Employment and Housing on July 25, 1998 and received a right-to-sue letter on July 30, 1998. He filed this lawsuit in Sonoma County Superior Court on July 30, 1999. On August 24, 2001 defendant removed to this Court.

Having abandoned several of his initial claims,[2] Smith now maintains the following claims: 1) violation of the California Fair Employment and Housing Act ("FEHA"), Gov.Code § 12900 *et seq.*, 2) wrongful termination in violation of public policy, and 3) breach of an implied contract to terminate only for good cause.

In June 2001 Smith received a full medical release.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995), and noting that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter

---

**2.** In his opposition brief Smith abandoned his claims against Sears for denial of LTD benefits, breach of implied covenant of good faith and fair dealing, and punitive damages.

of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## II. Fair Employment and Housing Act Claim

 Smith claims that Sears failed to provide reasonable accommodation after his injury in violation of FEHA. To establish a prima facie case of failure to accommodate, the plaintiff must show that (1) he has a disability within the meaning of FEHA, (2) he is a qualified individual, meaning that he can, with or without reasonable accommodation, perform the essential functions of his job or the job to which reassignment was requested, and (3) he suffered an adverse employment action—here that reassignment was not offered. *See Jensen v. Wells Fargo Bank,* 85 Cal.App.4th 245, 256, 102 Cal.Rptr.2d 55 (2000). Plaintiff does not have to show, as defendant contends, a causal connection between the failure to accommodate and his disability, because "the employer's failure to reasonably accommodate a disabled individual is a violation of the statute in and of itself." *Id.*

### A. Qualified Individual

Defendant claims that no issue of material fact exists as to whether plaintiff was a qualified individual under the statute. Sears contends that Smith's consistent claims prior to filing this suit that he was totally disabled establish that he was unable to perform any job at Sears regardless of accommodation.

In *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), the Supreme Court considered whether an individual receiving Social Security Disability Insurance ("SSDI") was estopped from bringing an ADA failure to accommodate claim against her employer. To receive SSDI an individual must have a disability such that he is "unable to do [his] previous work" and "cannot … engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). By contrast a failure to accommodate claim under the ADA or FEHA requires plaintiff to show that he could perform the essential functions of his job with accommodation. The Court held that these claims are not inherently inconsistent because a "suit claiming that the plaintiff can perform [his] job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform [his] own job (or other jobs) without it." *Cleveland,* 526 U.S. at 803, 119 S.Ct. 1597. But to defeat summary judgment, the Court required plaintiff to explain how the two claims were consistent in the particular case.

 In assessing whether the plaintiff's explanation of how the claims were consistent was adequate, the Court announced the following standard: "To defeat summary judgment, th[e] explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807, 119 S.Ct. 1597.

 California courts look to federal interpretation of the ADA in interpreting FEHA. *See Hanson v. Lucky Stores,* 74 Cal.App.4th 215, 224 n. 7, 87 Cal.Rptr.2d 487 (1999); *Pensinger v. Bowsmith, Inc.,* 60 Cal.App.4th 709, 719, 70 Cal.Rptr.2d 531 (1998). Furthermore, it seems appropriate to extend the framework set forth in *Cleveland* to prior potentially inconsistent claims other than those made with regard to SSDI benefits.

#### 1. Smith's Previous Claims

 Smith applied for SSDI payments. Defendant argues that by making a claim for SSDI benefits, Smith necessarily rep-

resented that he was completely disabled for work-related purposes. *See Kennedy v. Applause Inc.*, 90 F.3d 1477 (9th Cir. 1996). As stated above, however, the claims are not inherently inconsistent with Smith's current claim because they do not speak to accommodation. For the same reasons, Smith's claim for state disability payments is not inherently inconsistent.

Smith also filed a petition seeking to have the Healdsburg School District, which owned the court where his basketball injury occurred, waive the applicable statute of limitations so he could bring a tort action. Attached to that petition, Smith swore under oath that he was "permanently disabled" from work as an appliance service technician. Again, under *Cleveland* this statement is not inconsistent with Smith's current claim because it does not speak to Smith's capabilities with accommodation. Smith made similar representations in his demand to arbitrate his grievance with Kaiser regarding the care he received for his injury and his appeal of the denial of LTD benefits under the Met-Life policy.

### 2. Smith's Explanation

Smith argues that his prior representations must be understood in the context in which they were made. In particular, Smith argues they must be understood in the context of the MetLife LTD plan. As argued by Smith, the definition of disability under the LTD plan does not make reference to accommodation. In essence, Smith argues the distinction set forth in *Cleveland.*

A close examination of the LTD policy supports plaintiff's position. As described in the Summary Plan Description, during the initial 30 months: " 'Total Disability' means that because of Illness or Injury, you cannot do your own job or any other job for which you are reasonably qualified

based on your training, education, and experience."

Defendant asserts that "for Smith to claim he could not perform *any job* for which he was qualified by education, training and experience is a sweeping statement of disability, and by any definition or common sense precludes an assertion that some accommodation would allow him to work." Reply at 7. But this is almost exactly the assertion that the Supreme Court rejected in *Cleveland.*

### B. Failure to Accommodate

Because there is a triable issue of fact as to whether Smith is a qualified individual, defendant can prevail on summary judgment only if it can "establish[ ] through undisputed facts that (1) reasonable accommodation was offered . . .; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *Jensen,* 85 Cal.App.4th at 263, 102 Cal.Rptr.2d 55. Defendants place primary reliance on the second factor.

At the time of his discharge, Smith's physical activity was severely limited by order of his physician. As stated above, plaintiff could not lift or carry more than 10 pounds, and only occasionally could lift or carry less. Plaintiff was also unable to bend, squat, kneel, or climb. *See* Defendant's Exhibit K.

Defendants have submitted the declaration of Julie Portelli as evidence that Sears had no vacancies for which Smith could

have performed the essential functions given his medical restrictions. Portelli Decl. ¶ 2. Portelli was the branch supervisor of Sears' Santa Rosa facility when plaintiff was terminated. Her declaration states:

> At or around the end of July, 1997, Sears had no openings in or around Santa Rosa in a permanent position that could have been performed by a person with Plaintiff's skills who could not lift over 10 pounds, could only lift up to 10 pounds occasionally, and could not bend, squat, kneel, or climb at all.

The declaration is perhaps most notable for what it does not state. It mentions nothing about accommodation. That is, the declaration does not state that there were no opening that Smith could have filled with accommodation. This distinction is of crucial importance; as discussed above, it is the very distinction that makes Smith's previous claims of total disability consistent with this law suit.

The supplemental evidence submitted by defendant is even less satisfactory. For example, the Declaration of Mike Riordan states:

> I am not aware of any other positions at the Santa Rosa facility that could have been performed by someone with [Smith's] restrictions.

Riordan Decl. ¶ 6. Again there is no mention of Smith's capabilities with accommodation.

The parties spend considerable time and effort pointing to specific jobs that Smith could, or could not, perform. The Court will not address these efforts in detail, because it concludes that defendant did not meet its initial burden of demonstrating that there were no open position which Smith was capable of filling *with* accommodation.

## III. Wrongful Termination in Violation of Public Policy

This claim is predicated on a violation of FEHA, accordingly summary judgment on this claim is hereby DENIED.

## IV. Breach of Implied Contract to Terminate Only for Good Cause

Smith originally claimed that an implied contract to terminate only for good cause had arisen between Smith and Sears. Smith seems to have abandoned this claim. Smith now argues that: "Sears limited its at-will discretion not by impliedly promising discharge only for good cause, but by ruling out consideration a handful of listed factors," including disability.

First, this new allegation is not before the Court. Second, even if it were, Sears' at will-discretion is limited in this manner by operation of law, and therefore not separately enforceable under contract theory. Summary judgment in favor of defendant is hereby GRANTED on this claim.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED with respect to plaintiff's claim for Breach of Implied Contract. Defendant's motion for summary judgment with regard to plaintiff's FEHA and Wrongful Termination claims is hereby DENIED.

**IT IS SO ORDERED.**